All right, Ms. Richards. Good morning, Chief Judge Stewart, Judge Owen, Judge King. My name is Jennifer Selene Richards, and my co-counsel, Barrett Beasley, and I represent Cisco Central Alabama. Every member of this panel has had experience with the court-supervised settlement agreement for the BP oil dispute. Today's issue, while luckily less complicated than some that this panel has had to address, is nevertheless very important. We're here today because the district court erred in interpreting an unambiguous provision in the contract in four ways. First, he used a fairness analysis. When both parties agree that today's contract is unambiguous, intent and fairness should never have come into play. Second, we love when lawyers tell us things are unambiguous, and we love it even more when they tell us things are clear. You know, Chief Judge, I struggled with this when I started reading the briefings of the parties, and I thought, if everybody agrees that this is so clear, then how are we here? And Judge King actually summarized it well. She wrote about interpretation of a maritime contract in Chambulk, and both parties agreed it was unambiguous, and she said, just because there are different interpretations does not mean it's ambiguous. And so certainly there is more than one interpretation, but we still fall under the guise of the well-accepted principle that this is a de novo review of an unambiguous provision in the contract. Well, I understand. I just couldn't pass up the opportunity. It makes us, it tunes up our listening powers when lawyers tell us things are unambiguous and clear and all that, so we're open to you. I guess if it was unambiguous, you and I would both be out of a job, right? Yeah, job security, there's a lot to be said for it. The second reason is that the judge reformed the contract by adding the term calendar before month, when the contract simply doesn't require it. In fact, by adding calendar, he's affirmatively added in a step of analysis and in doing so, reformed that contract. Third, he found policy 218 and Food Giant to be instructive. Policy 218 is a provision that both parties agreed on its face does not apply, nor has it ever been officially blessed by this court, and Food Giant is an unpublished opinion that while referencing 218, the court said was really just a matter of a calculation error that the parties were He failed to follow this court's published opinion that the parties referenced as policy 495 opinion. It's one of the many opinions that spurred from the whether or not you could match revenues, but that opinion unequivocally states that the claimant gets to choose its own compensation period, and that opinion had come out several months before the district court issued its opinion, and he failed to even address that and apply the claimant's ability. Let me ask you about that. What was your client's fiscal year in 2009? You say your client operates on a fiscal year. Right. What was the fiscal year 2009? You mean what were the exact dates on start and finish? Your Honor, I don't know the answer to that question. It's certainly in the record. I focused on the fact that what they submitted was a 445 period, so three months. Let me ask it this way. Was the beginning and ending date to the fiscal years for 2009, 2010, 2011 the same? Did the fiscal year begin and end on the same calendar date for those three years? Right. I don't believe they begin and end on the same calendar date, Your Honor. Instead, every period is made to be consistent. The purpose of doing a 445 financial is so that when you compare your quarterly revenue, you have a more consistent comparison for work days. Okay. So let's get to that point. Did each quarter have the same number of days? Yes. The idea is each quarter has a four-week, a four-week, and a five-week period without fail. I admittedly did not count the exact day on that. Instead, just focusing on the 4, 4, and 5 element of that. Instead, in fact, Judge King, the focus is not on the exact same number of calendar days. The focus is on making sure that each month has the same number of working days, and that's why you do the 445 financial. So the answer to your question would be no. All right. Let me get more specific. What days did your client choose as the three-month period, beginning and ending date? Your Honor, I do not have that written down with me. I can certainly supplement so the court doesn't have to do the homework. Okay. Did the comparable period for the following year, or the preceding year, I can't remember which it is, have the same beginning and ending date, same number of days? Same number of working days? No, same number of days. I don't know the answer to that, Your Honor. Some years it would. Some years I think there would be a one- or two-day difference. Well, it seems to me if there's a one- or two-day difference, you would have to do some adjustment. You'd have to pick three months means three months some way or another. And if your definition, it seems to me you have to be consistent year to year over what three months means. And if there's a discrepancy between 2009, 2010, 2011, you pick a three-month period, but you have to have the same number of days at least, it would seem to me, to make it apples to apples. And if it's not, it seems to me there would have to be some adjustment of the data. Either exclude a day, add a day, whatever. I agree with that, but I think that the way that Cisco did their financials actually gets you to the same conclusion, although they look at the same number of working days. So what the court is focusing on is the same number of calendar days, you know, 30 months in May, one year, 30 months. Well, it seems to me to compare apples to apples, you still have to look at the same number of days. Right. And I'm asking if your calculations did that, and if so, did they look at the same actual number of days, not working days? Right. And my answer to you is I believe that there would be slight variations from year to year. Oh, and it seems to me if there are variations, you have to adjust the data because one has more days than the other. My counter to that would be we think about it like the leap year. Every fourth year, February would have less days, and the settlement agreement, as far as I'm aware, doesn't account for that, and the claims administrators don't adjust based on that, which actually means that Cisco's way of doing things would be more fair because it focuses on number of business days rather than months. Well, I think we only look at fair. We only look at fair. Well, you're right. But if you're worried about the practical application of the days changing so that it makes for an inaccurate comparison, I actually think Cisco's model does a better job of that because even if it did fall in a leap year, you would still be working with the same number of business days. It seems to me you could pick July 7th through the following certain number of whatever you decide. If your fiscal year starts on July 7th, it seems to me you can pick July 7th, but you have to do it for apples to apples for each year. And for however many days, whatever you define as three-month period, it has to be the same number of days in the following period. And it's not clear to me that that's the case here. It's also, I don't believe, that clear in the settlement agreement. It says compare three months, three sequential months. Same months, though. Yes. Yes, Sharon. Same to me means the same number of days at least. Well, and that's what the discrepancy becomes is when the settlement agreement only says months, and there are different ways of doing that, does it mean that we necessarily have to go back to the same number of days in a calendar month? Or, like the settlement agreement says, can the claimants provide their contemporaneous records even if they're not done on GAAP accounting principles? And other than a few instances that we've seen that I can walk the court through, the court has consistently held that the claims administrators can use those contemporaneous financials and that they don't need to move. I think what the court is suggesting, while it seems like a very common-sense analysis, you could argue that that's the moving, smoothing, and reallocating of revenue to ensure consistency that this court said in the policy 495 opinion is simply not allowed. The court said that may well be the fairer alternative, but that's not what's provided for in the settlement agreement. It's a factual matter. If you decided to pick, for example, July 7th, that was your period in 2010, you would have to pick July 7th for the comparable year, and however many days follows July 7th, it would seem to me, to be comparable. And you aren't smoothing or anything else, you're just, those are the brackets for each comparable period at a minimum. And if you wanted to argue that, well, you look at weeks, you would still have to take the same number of days, it seems to me, to make it apples to apples. Right. So what I'm trying to get at, is that what your calculations do or not? Yes, our calculations seek to make it apples to apples on a business day, business week comparison. A great example I think I thought of to make this simpler for myself was a law firm. In May of 2017, there might be 20 billable days in that law firm, because the month starts on a Monday. And then in May of 2018, there might be 19 billable days. So your revenue is going to necessarily look lower, all other things staying equal in the next year, even though it was really just because there were less working days. Your attorneys weren't billing as many days. So I thought if this is the same way, what Cisco does is they seek to eliminate that variability and have the same number of working days. So they are comparing apples to apples. And every, you know, when they submit their claims, their months, they actually do title their months as January, February, March. And in doing so, they keep them consistent with four week, four week, and five week. But it's not as clean as what the court is suggesting on it starts on January 1st every year or it starts on January 2nd. Going back to the plain language of the contract, nowhere in the settlement agreement does it require Gregorian months or the idea that if you start on the first day of one month that you have to pick it up at the exact same time the next year. And in fact, the agreement suggests that the parties knew how to distinguish that in Section 5.3.2.1 and 5.3.6.2. It distinctly states that the businesses may maintain financials on a calendar or fiscal year. So there we see the word calendar inserted or fiscal considered. Instead, when we talk about month, we only see the word month, which suggests to me that the parties certainly knew how to narrow that if they wanted to and they chose not to. Similarly, the court-approved policy for 495, policy 495, has it, and this is the record on appeal at 3439 in Note 1. It suggests that the claimants can choose and submit financials on a 12-month period consistent with its fiscal year, which is the 12-month period it uses to file its taxes. So it gives them this ability to choose their own and nowhere forecloses that. BP looks at or BP cites you to three different cases to say that month always has to mean calendar month. And in doing so, I think they're actually asking this court to make a bright-line rule that any time going forward in this court's jurisprudence, if month is not specifically stated as calendar month, then that's what it means, because its cases are not as broad as it suggests. But what it's asking this court to do is take those cases and extrapolate that and determine that you have to add calendar month. It looks at a 1953 Fifth Circuit opinion FOGL. That one was actually specific to IRS provisions, and in that they were looking at when six months had accrued, and it started on December 19th. And the appellant there was trying to get creative and said, well, you have to do 180 days, not six months. And the court said, no, we're going to look at other IRS provisions, and that kind of indicates to us that while it's not perfectly clear, if you're starting on December 19th, you've got to go six calendar months from that. They also cited you to a Supreme Court opinion from 1864, Sheets. And similar, Sheets didn't establish a bright-line rule. It was looking at a lease agreement that said rent is due on the first of the month, and if you haven't paid by the following month, then you're in breach of the lease agreement. And one party said that that meant 30 days. The other one said calendar month. The court said in this context with a lease, I think we can agree June 1. You just roll to July 1. I would like to call the court's attention to the fact that several appeals panels, no less than seven that we've cited in the record, say that the very same action that the district court did was an abuse of discretion and overturned claims administrators doing the same thing. They said policy 218 simply doesn't apply and that you can absolutely use the 454 financials that it's the claimant's choice. Those are excellent examples of the very basic analysis I think this court should undertake, and those are at 3371, 3377, and 3415. And the appeal panel decision in this case followed the exact same analysis at 3404. Quickly, Food Giant is not instructive for several reasons. It's an unpublished per curiam opinion, but it was reviewing whether or not the district court abused its discretion in denying a review. It was not a de novo like this court is faced with, and it didn't deal with the application of policy 495. They said that they had waived that. It said yes, 218 has been referenced for the ability to take quarterly financials and turn them into In that case, the claimant had already turned their own quarterly financials into monthly, so the claimant hadn't made the argument that 218 shouldn't apply. The court said, really, what we seem to be arguing about here is just the way things were calculated. It was a simple miscalculation error, so that shouldn't be taken to say that this court approved using policy 218, which is for 13 periods, to allow our claimant's 454 financials to be redone into calendar months. It simply didn't go that far. All right. Thank you. You've reserved your rebuttal time. All right. Mr. Jones. May it please the court, I'm Stanton Jones, and I represent BP, the appellee here. The settlement agreement means calendar months, and before I begin my prepared remarks, I'd like to offer answers to some of Judge Owen's very concrete questions about the dates and the periods that we're talking about here under Cisco's accounting system, because I will see that Cisco's accounting system, without a conversion to calendar months, does not work under the formula and the calculations that this settlement agreement requires, and that allowing Cisco to use its system would create all manner of problems and inconsistencies and anomalies. So Judge Owen asked about Cisco's fiscal years at issue here. Cisco's fiscal years are not actually one year long in the way that we think of one year having 365 days. Cisco's fiscal years are different periods of time and begin on different dates and end on different dates every cycle, every year. So there are three fiscal years at issue here, and you can find all of this in the record on appeal on pages 722 to 724. The first fiscal year, and I'm going to use year even though it's not really a year, runs from June 28th, 2009 to July 3rd, 2010. And the third fiscal year at issue runs from July 4th, 2010 to July 2nd, 2011. And Cisco's counsel said that each quarter under Cisco's system has four weeks, four weeks, and five weeks, and three periods without fail, those were her words. That's not... Let's get specific. Sure. What three months did they pick? What was the beginning date and the end date of the three months without quibbling about what month means? Sure. I'll tell you the exact dates. And this is on, specifically on pages, you can find this on the record on appeal pages 722 to 723, and then you'd also want to look at page 633, which was Cisco's claim calculation form that shows the period that they picked. They picked three periods that they refer to as period four, period five, and period six. In 2010, period four ran from October 3rd to October 30th. Period five in 2010 ran from October 31st to November 27th, so it actually spanned two calendar months. Period six in 2010 ran from November 28th, 2010 to January 1st, 2011. That period, that month, as Cisco called it, spanned three separate months. How many days? It was 35 days. That was one of the five-week periods. It's got to be more than 35 days, doesn't it? It's 35 days. It's five weeks, seven days per week. It's 35 days. From November 28th, 2010 to January 1st. I thought their three-month period started October 3rd of 2010 and ended January 1st of 2011. That's their three-month period, yes. Okay, and how many days is in that three-month period? Oh, 91 days. Okay, and they compared that to what? They compared that to the similar periods four, five, and six from their accounting system in 2009, which ran in total from September 27th, 2009, to December 26th, 2009. And if I could just... How many days? That's also 91 days. The three periods or months that they picked in 2010 and in 2009 happened to have the same number of days. They both had 91 days. That was not necessarily the case, and that goes to the point that I was about to make earlier, that when Cisco's counsel said that each of their quarter has four weeks, four weeks, and five weeks without fail, that's wrong. That's not correct. It says in their briefs, in their submissions to the claims administrator and the appeal panel, and it shows very clearly in their accounting system, which you can find on the pages of the record that I gave to you, every sixth year, okay, the final quarter of every sixth year... You have to make some adjustments. That's because Cisco's fiscal year doesn't have 365 days. It doesn't approximate a Gregorian calendar year at all, other than it's each... I interrupt you. You said every sixth year. What happens? Every sixth year, the final quarter of the year in Cisco's accounting system has four weeks, four weeks, and six weeks, not four weeks, four weeks, and five weeks like the first five years in the cycle. The sixth year, the final quarter of the year hasn't... If you're looking apples to apples to try to compare what revenues and expenses were, all of that, if they chose a 91-day period out of 2010 and 2009, why isn't that a good approximation of three months? So... It's got... Even if you look at Gregorian calendar, it's got close to 90 days. They're not going to be 90 days on the nose. There are three separate reasons, Your Honor, that when Exhibit 4B to the settlement agreement says months, it means calendar months and not any different period of time. What if your fiscal year began on July 15th? It says you get to use your fiscal year. So I will say in the hundreds of thousands of claims that have been submitted to this settlement program, I'm not aware of a dispute that's arisen where a claimant has kept its books like that. There have been disputes that have arisen where some claimants keep this 445 or 454 system. There have been some claimants that keep their books on a quarterly basis, and those in the Food Giant case, this court affirmed converting those to a calendar month basis, exactly as the district court said should be done here. I'm not aware of any claimant where a dispute has arisen where the books were kept. All right, let's assume that, just for the sake of argument, that we agree policy 218 does not apply, because this is not a 13-month thing. So it's exactly as the district court said here. The underlying principle of policy 218 applies here. And the underlying principle of policy 218 is that when the settlement agreement repeatedly directs claimants to choose, and I'm quoting from Exhibit 4B, it says this 25 different times. It says the claimant may choose three consecutive months between May and December. Okay? It doesn't say you can't pick May 15th through July 15th. It means that, and it means that very, very clearly. And longstanding precedent of the United States Supreme Court, this court, and other federal courts confirms it. 150 years ago, okay, the United States Supreme Court in the Sheets case said this, and I'll quote, the term months is not technical. And when the parties to a contract have not themselves given it a definition, it must be construed in its ordinary and general sense, and there can be no doubt that in this sense calendar months are always understood. But fiscal years do not necessarily begin on the first month of some month. I mean, it's certainly possible that for various reasons a business would have a fiscal year that starts on the 15th day of the month, the 20th day of the month. It does not have to be the first day of the month. In that context, it seems to me that fiscal year would be, you would have to figure out what month meant in that context. So the settlement agreement says months between May and December. When it says month, it specifically refers to calendar months. Later in Exhibit 4B, the parties offered a series of examples of how the calculations were supposed to be done. In every single one of those examples, the hypothetical claimant chooses three calendar months. In all of Exhibit 4B, both the directions about how these calculations were to be done, as well as the examples that the parties constructed and offered to illustrate how they should be done, there are exclusively references to calendar months. And there are tons of references to calendar months. It says May, December, June, July, August. There are exclusively and repeatedly references to calendar months. There are no references to any period or measure of time other than a calendar month. And the Supreme Court, this Court, in the Fogel case as long ago as 1953, have said, again, the word month is not a technical term, and when undefined in a contract, it is commonly understood to mean a calendar month. Again, the Supreme Court said there is no doubt that the word months in a contract, if not defined differently by the parties, is always understood to mean calendar months. That's the U.S. Supreme Court and this Court and other federal courts. I think that when the parties here drafted this contract and directed claimants over and over again in Exhibit 4B to select three consecutive months between May and December, it's exceedingly clear, particularly against the backdrop of that case law, that the parties meant to select three consecutive calendar months like May or December or, as the examples at the back of Exhibit 4B specify, June, July, August, right, or August, September, October, pick three calendar months. And regardless of the manner in which any particular claimant, and there are hundreds of thousands of claimants, and this settlement agreement needs to be applied in a uniform, consistent way to all of them. That's very important. There's no question that's what the parties intended, that the settlement be applied uniformly and consistently across a vast number of claimants, that the way to do that is regardless of how any one or two or five claimants may choose to keep their own books, that those books be converted. If they're not kept on a calendar month basis, be converted to a calendar month basis using what this court described in the Food Giant case as simple arithmetic. And it is. It is simple arithmetic adding and subtracting to convert either Cisco's 445 system or a 454 system or a 13-period system, which is the alternative accounting system described specifically in Policy 218, or the quarterly basis accounting system that was at issue in Food Giant. Any of those non-calendar month accounting systems can be converted using simple arithmetic adding, subtracting, and dividing to be converted to a calendar month basis so that this settlement agreement and its causation and claims calculations can be conducted on a consistent basis and so that similarly situated claimants are treated the same and that claims don't rise or fall on the basis of the idiosyncrasies of any one claimant's accounting system. And, Your Honor, the anomalies that would arise if Cisco's alternative approach were accepted are many, and they're very problematic. Again, it just so happens that the three-month period, again, there aren't months, but what we'll call the three-month period that Cisco selected here happened to have 91 days in both 2010 and 2009. That was not necessarily the case. If Cisco had picked its periods 10, 11, and 12 from the relevant fiscal years, in 2010, Cisco's period 12 had six weeks, again, because every six-calendar year... What dates did period 12 encompass? So period 12 in Cisco's fiscal year that ran from June to July 2009 to 2010, this is on Record on Appeal, page 723, the 12th period ran from May 23rd, so like a week left in May, to July 3rd. It was six weeks long. That's 42 days. Now, if you go look at the similar period 12 in 2009, and this is at page 724 of the record, Cisco's 12th period was May 24th to June 27th. That's five weeks. That's 35 days. If Cisco had picked those periods, Cisco would be comparing not only apples and oranges in terms of dates that don't match up between the two years, but Cisco would be comparing one 42-day period to a 35-day period. It doesn't make any sense. And the other thing is that the settlement agreement, Exhibit 4B, is very clear. It says the claimant must select three consecutive months between May and December 2010. For the periods that Cisco selected here, the final period in 2010, it runs into 2011. It's not even in the right year. That period goes from November 28th, 2010 all the way through December 2010 and into January 1st, 2011. You are taking revenue from the incorrect year. So even if you somehow believe that the word months means something other than calendar months, which I don't think is any plausible reading of this contract, particularly in light of 150 years of consistent case law from the Supreme Court and this court saying that the word months obviously always, no doubt, means calendar months in a contract. But even if you could get around all of that, the contract says that the months have to be in 2010, and Cisco's go into 2011, wrong year. That, I think, should just be the end of this. It doesn't work. It isn't correct. Instead, what the district court did was exactly right. What the district court said is that consistent with the underlying principle, the rationale of Policy 218 and the Food Giant case, when a claimant uses an alternative non-calendar month accounting system, the settlement program accountants, so this small army of accountants from Price Waterhouse that actually do these calculations, should simply use what this court described in Food Giant as simple arithmetic, basic math to convert a claimant's non-calendar month accounting system to calendar months. Rather than allowing a claimant like Cisco or any other to use these different periods that have different number of days where each period spans two, sometimes three months. Some periods span across multiple calendar years. Some, again, are going to have 42 days in one period in one year, but 35 days in the same period in the prior year. It's not a workable system, and it's certainly nothing that this contract contemplates when it says, again, over and over and over again, the claimant must select three consecutive months between May and December. May and December are calendar months, of course, and in the example says a hypothetical claimant who chose June, July, and August. June, July, and August are calendar months. There's no basis. There is simply no way to read this contract to mean anything other than calendar months. Did the accountants here begin October 1 and end on December 31? I'm sorry? Did the accountants begin on October 1 and end on December 31? Yes. My understanding is that they, yes, because in Cisco's own submission, Cisco wrote that it was choosing October through December. Of course, what Cisco meant by that was not actually what we mean, but yes. Yes, exactly. If there are no further questions, we ask that the district court's decision be affirmed. Thank you. Thank you. Back to you, Ms. Richards, for rebuttal. Thank you, Your Honor. We're back at the exact same thing that this court had to face in issuing the Policy 495 opinion, which is BP realizes that it forgot to clarify something that it probably should have, and it thinks it's going to create results that are inconvenient for it or that might be complicated. And what this court said in the Policy 495 opinion and what members of this panel have said in other opinions interpreting the settlement agreement is that these alterations may be fair, but it cannot be implemented because it is inconsistent with the plain text of the settlement agreement. What the court said when it looked at whether or not industry-specific methodologies could be used in the Policy 495 opinion, the issue was similar to what BP's counsel just said. They came up to the court and they said, this is inconsistent. We've got these different industries, and they're providing different financials, so their expenses are all over the place. They don't match with their revenue. We need this court to tell us that we can apply Policy 495 and that we can move all of that around. And the court basically said, you know what, that might make more sense. It might be more convenient for BP, but that's not what's in the language of the contract. And the same rings true here. He says that this doesn't work and it would create anomalies, but I would encourage the court to go back and look at the appeals panel decisions that dealt with this exact issue. They found no problem. They did exactly what the settlement agreement in Policy 495 allows, which is they reviewed contemporaneously submitted financials. And absent an error, which nobody has claimed in this case that we're dealing with an error, you can assess those financials. And BP chose matching revenue periods. What do we do with the fact that your period includes one day outside the settlement agreement period? It's beyond December of 2010. I think that is certainly a sticking point to focus on, Your Honor, but I won't tell you that I would run straight through that one. But given that it allows the claimant to choose either their fiscal or their calendar year, then I think that there's room for that leeway. I mean, it says December 2010, and at least one day of your calculation is January 1. I mean, based on your argument, where do we stop that slippery slope past December 10? Right. Well, the idea would be that you start. I think it's pretty clear that the contract is trying to compare three consecutive months or a quarter. And in this case, the quarter starts in the year prior. I agree with the court that that's not as clear as I would like it to be. I'd like to speak to BP's position that it's stated directly over and over again in the contract, and it's exceedingly clear that calendar months are required. I think that the policy opinions implemented through the court-supervised settlement program have shown that that can't be the case. I mean, look at policy 218. Policy 218 is titled 13 period or 13th. I don't want to be imprecise. Claimants with 13-month reporting periods. So already we see that the claims administrators are left with a question mark. When you have 13 periods instead of 12, what are you supposed to do? So then they develop policy 218. And without getting into that policy and the fact that it hasn't necessarily been directly blessed by this court, it's still evidence of the fact that I think it's an overstatement to say that it's exceedingly clear and directly over and over again mandated that calendar months be used. And BP doesn't think that calendar months always have to be used, because they argued in the 495 opinion that you needed to move, smooth, and reallocate revenue, because when you did work in a calendar month or 445, that sometimes it was going to create anomalies because expenses and revenue were going to be accrued at different times. And this court said, that's the way the party's contracted. We can't write that in. And now BP says, no, a month is absolutely sacrosanct, and you can't. You can't pull that outside of calendar month, but they've certainly made arguments differently in the past. Going back to the plain language of the district court's opinion, he said in order to fairly interpret the contract, you had to apply calendar months. So I'll end where we started, which is that calendar is simply not in the contract, and fairness is not an issue when you're looking at the plain language that the parties agreed to. Thank you. All right, thank you. Thank you, counsel, both sides. The case will be submitted on the briefs and arguments, and we'll decide it.